# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE OF CONNECTICUT | ) | |
| COMMISSIONER OF LABOR, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:11-cv-00997-AWT |
| | ) | |
| v. | ) | |
| | ) | |
| CHUBB GROUP OF INSURANCE | ) | |
| COMPANIES, A DIVISION OF FEDERAL | ) | |
| INSURANCE COMPANY, | ) | SEPTEMBER 15, 2011 |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**<u>PAGE</u>**

TABLE OF CONTENTS ............................................................................................i

TABLE OF AUTHORITIES ....................................................................................ii

I.     INTRODUCTION ........................................................................................1

II.    FACTUAL BACKGROUND ........................................................................1

III.   LAW AND ARGUMENT ............................................................................3

     A.    Legal Standard For A Motion To Dismiss .................................................3

     B.    The Bonus At Issue Was Discretionary And Not Traceable To The Individual Efforts Of Mr. McMahon, And Thus Not "Wages" Under 31-71a. ........................5

     C.    The Requirement That An Employee Be Employed When A Bonus Is Paid Is Proper ........................................................................................10

     D.    Without A Statutory Violation, The Penalties Count Fails ........................12

     E.    Plaintiff's Common Law Causes Of Action Are Improper ........................12

         1    Plaintiff Lacks Authority To Assert These Common Law Claims ................13

         2.   An Adequate Statutory Remedy Exists And The Common Law Claims Are Duplicative. ..........................................................................14

     F.    The Quantum Meruit Claim Fails As A Matter Of Law ............................15

     G.    The Unjust Enrichment Claim Fails As A Matter Of Law ........................16

IV.   CONCLUSION ........................................................................................17

# TABLE OF AUTHORITIES

**PAGE**

## Federal Cases

*Ashcroft v. Iqbal*, --- U.S. ---, --, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ......................................3, 4
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ...............4
*Bernard-Thomas Bldg. Systems, LLC. v. Weitz Co., LLC*, No. Civ.A. 3:04CV810CFD,
    2005 WL 734175 (D.Conn. Mar. 28, 2005) ..............................................................................5
*Bongat v. Fairview Nursing Care Center, Inc.*, 341 F.Supp.2d 181 (E.D.N.Y. 2004)......................15
*Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008) ..............................................................................3
*Clougher v. Home Depot U.S.A., Inc.*, 696 F.Supp.2d 285 (E.D.N.Y. 2010)....................................15
*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) .............................................4
*Garcia v. Tyson Foods, Inc.*, 766 F.Supp.2d 1167 (D.Kan. 2011) ...................................................14
*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) ......................................................................................4
*I. Meyer Pincus & Associates v. Oppenheimer & Co., Inc.*, 936 F.2d 759 (2d Cir. 1991)...............4
*International Paper Co. v. Suwyn*, 978 F.Supp. 506 (S.D.N.Y. 1997)..............................................16
*Perry v. Upper Deck Co.*, No. 05cv1329-LAB (CAB), 2007 WL 1449797
    (S.D.Cal. May 11, 2007) ....................................................................................................... 14
*Rionda v. HSBC Bank U.S.A., N.A.*, No. 10-20654-CIV, 2010 WL 5476725
    (S.D.Fla. Dec. 30, 2010) .......................................................................................................11
*Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82 (2d Cir. 2009)..............................................................4

## Connecticut Cases

*Association Resources, Inc. v. Wall*, 298 Conn. 145, 2 A.3d 873 (2010).........................................7, 8, 9
*Blumenthal v. Barnes*, 261 Conn. 434, 804 A.2d 152 (2002) .........................................................13
*Burnham v. Karl & Gelb, P.C.*, 252 Conn. 153, 745 A .2d 178 (2000) ...........................................14
*Burns v. Koellmer*, 11 Conn.App. 375, 527 A.2d 1210 (1987) ......................................................16
*Commissioner of Labor v. C.J.M. Services, Inc.*, 73 Conn.App. 39 806 A.2d 1105 (2002),
    *affirmed in relevant part by* 268 Conn. 283, 842 A.2d 1124 (2004) ....................................13
*Commissioner of Labor v. Fireman's Fund Insurance*, No. CV084038312S,
    2010 WL 1052210 (Conn. Super. Feb. 18, 2010)..................................................................6, 8
*Ebbesmeyer v. Red Line Med. Supply, Inc.*, Docket No. CV 94-054008-S (FAC),
    15 Conn. L. Rptr. 466, 1995 Conn. Super. LEXIS 3264 (Conn. Super. Nov. 20, 1995) ......11
*Feathers v. Vivisection Investigation League, Inc.*, No. 990080107S, 2000 WL 1340365
    (Conn. Super. Aug. 31, 2000)...............................................................................................14
*Mytych v. May Dep't Stores Co.*, 260 Conn. 152, 793 A.2d 1068 (2002)........................................11, 15
*Pickering v. Aspen Dental Management*, 100 Conn.App. 793, 919 A.2d 520 (2007)......................14
*Ranger v. Gianmarco*, No. CV085004260, 2008 WL 4739531 (Conn.Super. Oct. 7, 2008)...........17
*Rossman v. Morasco*, 115 Conn.App. 234, 974 A.2d 1 (2009)........................................................16
*Russell v. Lornamead, Inc.*, No. FSTCV106004491, 2011 WL 1567000
    (Conn. Super. Apr. 6, 2011)..................................................................................................8
*Sgro v. World Wrestling Ent., Inc.*, No. CV106003367S, 2010 WL 5610880
    (Conn. Super. Dec. 16, 2010) ...............................................................................................8

*United Coastal Industries, Inc. v. Clearheart Construction Co.*, 71 Conn.App. 506, 802
   A.2d 901 (2002)........................................................................................................17
*Weems v. Citigroup, Inc.*, 289 Conn. 769, 961 A.2d 349 (2008)....................................5, 7, 8, 10
*Wooters v. People's Bank*, No. CV044001723, 2007 WL 587027
   (Conn. Super. Feb. 7, 2007)......................................................................................11
*Ziotas v. The Reardon Law Firm*, 296 Conn. 579, 997 A.2d 453 (2010).........................6, 7, 8

## Out of State Cases

*Phillips v. Patterson Ins. Co.*, 813 So.2d 1191 (La.Ct.App. 2002) ..................................12
*Schachter v. Citigroup, Inc.*, 218 P.3d 262 (Cal. 2009)...................................................11
*Truelove v. Northeast Capital & Advisory, Inc.*, 95 N.Y.2d 220, 225 (2000)..................5, 10, 11

## Statutes and Regulations

Conn. Gen. Stat. § 31-1...............................................................................................13
Conn. Gen. Stat. § 31-69a...........................................................................................12
Conn. Gen. Stat. § 31-71a...........................................................................................passim
Conn. Gen. Stat. § 31-72.............................................................................................13, 14
Section 162(m) of the Internal Revenue Code of 1986 .................................................9, 10
26 C.F.R. § 1.162–27(e)(1).........................................................................................9

Pursuant to Fed. R. Civ. P. 12(b)(6) and D. Conn. L. Civ. R. 7, the Defendant, Chubb & Son, a Division of Federal Insurance Company ("Chubb"), submits this memorandum of law in support of its Motion to Dismiss Plaintiff's Complaint.  For the reasons set forth below, Chubb's Motion should be granted, and Plaintiff's Complaint should be dismissed in its entirety.

## I.      INTRODUCTION

Chubb's Annual Incentive Compensation Plan, under which Plaintiff's claim for wages is made, plainly vests discretion in Chubb to determine both to whom, and for how much, bonuses will be paid.  The Connecticut Supreme Court has left no doubt that bonuses under discretionary plans are not considered "wages."  Indeed, Plaintiff's similar case against another employer was dismissed on these exact grounds.  In a misguided attempt to circumvent this clearly established precedent, Plaintiff has asserted common law unpaid wage claims, which been rejected by courts in Connecticut and elsewhere.  Plaintiff lacks the statutory authority to bring such common law claims, and furthermore has not pled a plausible claim under any of those theories.  For all these reasons, Plaintiff's Complaint should be dismissed.

## II.     FACTUAL BACKGROUND

Plaintiff, State of Connecticut Commissioner of Labor,[1] commenced this civil action on behalf of Chubb's former employee, Sean McMahon.  Plaintiff's five-count Complaint, filed in Connecticut Superior Court, Judicial District of Hartford, indicates a Return Date of June 21, 2011.  On June 22, 2011, the case was removed to the District Court.  Plaintiff has moved to remand the case to State court, and Chubb has objected to that motion.  The Motion to Remand is fully briefed.

In Plaintiff's Complaint, he alleges that Chubb failed to pay Mr. McMahon incentive wages under Chubb's Annual Incentive Compensation Plan (the "Plan," attached as Exhibit A) for his performance during the year 2008.  (Complaint, ¶¶ 22, 26.)  Bonus payments under this Plan are left

---

[1] The current Commissioner is Glenn Marshall.

entirely to the discretion of Chubb.  The Plan states that bonus "[a]wards under the Plan for any

Fiscal Year ***may*** be granted to those Employees who shall be selected by the Committee after

consideration of management's recommendations."  (Emphasis added) (Plan, Section 4.)  The

"Committee" is defined under the Plan as "Organization & Compensation Committee of the Board

of Directors or such other committee of the Board of Directors as the Board of Directors shall from

time to time designate to administer the Plan."  (Plan, Section 2.)  The Committee's procedure for

payment of bonuses is established as follows:

> As soon as administratively practicable after the completion of a Fiscal Year (but
> in no case later than March 31st of the calendar year immediately following the
> completion of the Fiscal Year), the Committee shall certify the achievement of the
> Performance Goals with respect to the Covered Employees and approve Award
> payments to Participants based upon the achievement of the Performance Goals
> and upon management's assessment of the Participant's individual performance
> during the Fiscal Year.

(Plan, Section 6.)  The Committee retains complete discretion to establish both the amount of,

and the entitlement to, bonuses payable under the Plan.  (*See* Plan, Section 5 (stating that the

Committee has discretion to "reduce or eliminate any Award under the Plan.")  The Committee

also has complete discretion to determine the nature of the "Performance Goals," which trigger

the bonuses.  (*See* Plan, Section 2 (defining "Performance Goals" to include, among other

measures, "any other performance criteria established by the Committee.")  Section 3 further

provides: "The Committee shall have sole and complete authority and discretion to adopt, alter

and repeal such administrative rules, guidelines and practices governing the operation of the Plan

as it shall from time to time deem advisable, and to interpret the terms and provisions of the

Plan."  Moreover, the Board of Directors of The Chubb Corporation retains the right to "amend,

suspend, or terminate any or all provisions of the Plan at any time, provided that no such

amendment. . . ."  (Plan, Section 12.)

2

Plaintiff alleges that Mr. McMahon's employment with Chubb ended on or about February 26, 2009.  (Complaint, ¶ 14.)  Section 6 of the Plan provides that "Participants must be employed by an Employer as of the Award payment date or will forfeit the Award. . . ."  Plaintiff claims that "[a]fter the McMahon had earned his 2008 Incentive Bonus Wage but before that wage became payable, McMahon was terminated and he was denied his earned 2008 Incentive Bonus Wage under the Forfeiture Provision."  (Complaint, Second Count, ¶ 34.)  Plaintiff alleges that this forfeiture provision is unenforceable for a variety of reasons.  (Complaint, ¶ 25.)  Plaintiff's causes of action are as follow:

| Count | Cause of Action |
|-------|-----------------|
| First | Violation of Conn. Gen. Stat. § 31-72 |
| Second | Unjust Enrichment |
| Third | Civil Penalties Under Conn. Gen. Stat. § 31-69a |
| Fourth | Common Law Failure To Pay Wages |
| Fifth | Quantum Meruit |

In his First Count, Plaintiff "seeks to collect double damages, i.e., $37,700 x 2 = $75,400 together with a reasonable attorney's fee, costs and interest . . . ."  (Complaint, ¶ 28.)  The Second, Fourth and Fifth Counts each seek recovery of the alleged unpaid incentive wages.  The Third Count seeks to fine Chubb a $300 statutory civil penalty as a result of its alleged non-payment of wages.

As set forth below, each of Plaintiff's claims fails as a matter of law and should be dismissed.

## III.    LAW AND ARGUMENT

### A.    Legal Standard For A Motion To Dismiss

When considering a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  *See Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, --- U.S. ---, --, 129 S.Ct. 1937, 1949, 173

L.Ed.2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 95 (2d Cir. 2009). Two working principles underlie the Supreme Court's plausibility standard.  *See id.*  "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949).  At the same time, the Supreme Court reiterated that the Rule 8 pleading threshold "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 550).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950.  As the Supreme Court previously stated:

> Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

*Twombly*, 550 U.S. at 556 (internal quotation marks and citations omitted).

On a motion to dismiss, the Court may examine any documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading.  *See I. Meyer Pincus & Associates v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the court may consider "any written instrument attached to [the complaint] as an

exhibit or any statements or documents incorporated in it by reference."); *Bernard-Thomas Bldg. Systems, LLC. v. Weitz Co., LLC*, No. Civ.A. 3:04CV810CFD, 2005 WL 734175, *1, n.2 (D.Conn. Mar. 28, 2005) (considering contract referenced in complaint on motion to dismiss).

      **B.**     **The Bonus At Issue Was Discretionary And Not Traceable To The Individual Efforts Of Mr. McMahon, And Thus Not "Wages" Under 31-71a.**

      Conn. Gen. Stat. § 31-71a(3) defines the term "wages," as used in Sections 31-71a to 31-71i, inclusive, as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation."  Three recent Connecticut Supreme Court cases construing this definition have made clear that the bonus at issue in this case cannot be considered a "wage" under 31-71a.

      In *Weems v. Citigroup, Inc.*, 289 Conn. 769, 961 A.2d 349 (2008), the Connecticut Supreme Court held that bonuses awarded on a discretionary basis do not constitute wages. *Weems* involved a class of former employees who claimed that the forfeiture provisions of three different capital accumulation plans violated Connecticut wage statutes because the provisions "enable the defendants to withhold accrued wages, including bonuses, from their employees." *Id.* at 772.  Applying the rationale articulated by the New York Court of Appeals in *Truelove v. Northeast Capital & Advisory, Inc.*, 95 N.Y.2d 220, 225 (2000), the court found that the bonuses did not qualify as wages "because they were not linked to ascertainable work performed by an individual, but rather were discretionary and tied to the performance and profitability of the defendants' firms."  *Id.* at 778.  Indeed, the bonuses at issue were not wages under Section 31-71a because the bonus awards were "tied to subjective factors such as diversity within a branch, and the profitability of the particular branches, which are factors not entirely predictable or within the control of the specific employee."  *Id.* at 782.  Thus:

> Within the context of the entire opinion, *Weems* appears to hold that an employee who seeks to recover a bonus under the wage statutes must prove that the bonus meets two criteria. First, the bonus cannot be a wage if its award is solely within the employer's discretion. In other words, the employee must have some right to the bonus that restricts the employer from unilaterally withholding it. Second, the bonus must be linked solely to the employee's performance or efforts and not linked to other factors unrelated to the particular employee's performance.

*Commissioner of Labor v. Fireman's Fund Insurance*, No. CV084038312S, 2010 WL 1052210, at *5 (Conn. Super. Feb. 18, 2010).

In *Fireman's Fund*, the Connecticut Superior Court applied *Weems* and entered summary judgment against the Plaintiff, squarely rejecting Plaintiff's arguments that discretionary bonuses are wages.  That case involved a claim by a former Claims Director that he was entitled to bonuses under two plans, even though the employee left his job prior to the bonus payment date. Under the bonus plans at issue, the employer retained "sole discretion regarding whether to award the bonuses."  *Id*. at *6.  Thus, even though the bonuses at issue were "tied to the employee's performance," they were found not to constitute "wages" under Section 31-71a.  *Id*.

In June 2010, the Connecticut Supreme Court decided *Ziotas v. The Reardon Law Firm*, 296 Conn. 579, 997 A.2d 453 (2010), which re-affirmed its holding in *Weems* and further clarified that a bonus does not constitute wages, even where its payment "was contractually required and only the amount of the bonus was discretionary."  *Id*. at 588-89.  *Ziotas* involved a claim by an attorney that his former employer had violated the wage statutes by failing to pay him his annual bonus, customarily paid in December, after he left the employ of the law firm in October, 1998.  The amount of that bonus was entirely discretionary and "not calculated on the basis of any particular percentage of the [law firm's] income."  *Id*. at 583.  The court noted that *Weems* and the cases cited therein did not "address the situation in which the payment of a bonus

was contractually required and only the amount of the bonus was discretionary." *Id*. at 588-89.

The *Ziotas* court concluded that:

> such a bonus does not constitute wages under § 31-71a(3) ... [because] our
> reasoning in *Weems* also applies when an employee is contractually entitled to a
> bonus, but the amount is indeterminate and discretionary.  We stated in that case
> that 'the wording of the statute, in expressly linking earnings to an employee's
> labor or services personally rendered, contemplates a more direct relationship
> between an employee's own performance and the compensation to which that
> employee is entitled. Discretionary additional remuneration, as a share in a reward
> to all employees for the success of the employer's entrepreneurship, falls outside
> the protection of the statute.' ... Although an employee may have a justified
> expectation of additional compensation when the employer is contractually
> obligated to give a bonus to the employee and any contractual conditions, such as
> the employer's annual profitability, are met, the relationship between performance
> and compensation is still attenuated if the amount of the bonus is discretionary
> and dependent on factors other than the employee's performance.

*Id*. at 589.

Following *Weems* and *Ziotas*, in order to establish that a bonus is a 'wage," an employee

must show that: 1) neither the amount nor entitlement to a bonus is discretionary; and 2) the

bonus is attributable to the ascertainable efforts of the particular employee.

In August 2010, the Connecticut Supreme Court issued yet another decision regarding

what constitutes "wages" under Section 31-71a.  In *Association Resources, Inc. v. Wall*, 298

Conn. 145, 2 A.3d 873 (2010), the court evaluated a claim under Section 31-72 for a bonus that

was:

> entirely nondiscretionary, both as to whether they would be awarded, and the
> amount thereof. Under the employment agreement, the defendant was
> contractually bound to pay the bonus to the plaintiff. Additionally, the amount of
> the bonus, which derived from the net profitability of the Digital Group after
> expenses, was nondiscretionary because it was subject to calculation by applying
> a contractually mandated, precise formula set forth in § 2.2(b) of the employment
> agreement.

*Id*. at 176.  The *Wall* court further found that the bonus was linked solely to the ascertainable

efforts of the plaintiff "as a senior level, executive manager of one of the defendant's divisions,

with the bonus tied directly to the success of that specific division. . . ."  *Id.* at 177-78.  *Wall*
illustrates what a plaintiff must demonstrate -- lack of discretion as to payment of bonus and
amount of bonus, as well as a direct connection to the efforts of the employee -- in order to show
that a bonus is a "wage" under Section 31-71a.  Following *Weems, Ziotas* and *Wall*, courts have
dismissed unpaid wage claims where the bonus at issue was discretionary and/or not attributable
to the ascertainable efforts of the particular employee.  *See, e.g., Russell v. Lornamead, Inc.*, No.
FSTCV106004491, 2011 WL 1567000, at *5 (Conn. Super. Apr. 6, 2011) (granting summary
judgment to employer on unpaid wage claim, citing *Weems*); *Sgro v. World Wrestling Ent., Inc.*,
No. CV106003367S, 2010 WL 5610880 (Conn. Super. Dec. 16, 2010) (striking unpaid wage
claim, citing *Weems* and *Ziotas*).

There is no question that the bonus here at issue is discretionary as to both entitlement
and amount, and is not attributable to the ascertainable efforts of Mr. McMahon.  Under the Plan,
the Committee has complete and unfettered discretion to determine whether a bonus is awarded
to a particular employee, as well as the amount of that bonus.  Indeed the Plan states that the
Committee may "eliminate" a bonus if it wishes, and the Board of Directors may terminate the
Plan at any time.  (Plan, Sections 5, 12.)  The fact that such discretion is reserved under the Plan
means that the bonus at issue is not a "wage," and therefore is dispositive of Plaintiff's claim
under Section 31-72.  *See Fireman's Fund*, 2008 WL 1052210 at *5 - *6.

Moreover, the bonuses paid under the Plan are not directly attributable to an individual
employee's ascertainable efforts.  Rather, the bonus is calculated based upon any performance
criteria established by the Committee, which may include "Corporation, Subsidiary, Affiliate,
operating unit or division financial performance measures," such as "cash return on average
equity," "stock price," and "combined loss and expense ratio."  (Plan, Section 2 (defining

"Performance Goals).)  Unlike in *Wall*, where the plaintiff was a "executive manager of one of the defendant's divisions," and his bonus was "tied directly to the success of that specific division," *Wall*, 298 Conn. at 177-78, Mr. McMahon was a Senior Claim Examiner I, and is not alleged to have had any responsibility for managing any of Chubb's affiliates, subsidiaries, operating units, or divisions.  The Connecticut Supreme Court has been clear that the type of bonus at issue here cannot be considered "wages," and Plaintiff's claim should be dismissed.

Plaintiff attempts to muddy the water by citing the Plan's reference to Section 162(m) of the Internal Revenue Code of 1986 ("Section 162(m)").  The Plan states:

> if any provision of the Plan would cause the Awards granted to a Covered Employee to fail to qualify for the "performance-based compensation" exception under Section 162(m) of the Code, that provision, insofar as it pertains to the Covered Employee, shall be served from, and shall be deemed not to be a part of this Plan, but the other provisions hereof shall remain in full force and effect.

Section 162(m) provides that bonuses payable to individuals earning over $1 million per year qualify for the federal tax exception found within Section 162(m), only if the bonus satisfies certain requirements.  These dense requirements are set forth in Treasury Regulation section 1.162–27(e)(2) through (5).  26 C.F.R. § 1.162–27(e)(1).  Among the requirements set forth in that regulation is that "[t]he terms of an objective formula or standard must preclude discretion to increase the amount of compensation payable that would otherwise be due upon attainment of the goal." 26 C.F.R. § 1.162–27(e)(2)(iii).  Thus, it appears Plaintiff has cited Section 162(m) to argue that the Plan's incorporation of that provision makes the bonus at issue non-discretionary.

This argument is flat-out wrong because there is no plausible claim that Mr. McMahon was, at any time, a "covered employee" under Section 162(m).  Section 162(m) provides, in relevant part, that "[t]he term 'covered employee' means any employee of the taxpayer if ... the total compensation of such employee for the taxable year is required to be reported to

shareholders under the Securities Exchange Act of 1934 by reason of such employee being among the **4 highest compensated officers** for the taxable year (other than the chief executive officer)." (Emphasis added.) 26 U.S.C. § 162(m)(3). Plaintiff asserts that "McMahon was at all times pertinent to this action a 'covered employee' as that term is defined within Section 162(m)." (Complaint, ¶ 10.) However, Plaintiff does not, and cannot, allege that Mr. McMahon was one of Chubb's four highest paid employees, or that he earned over $1 million per year. Indeed, the identification of Mr. McMahon as a "Senior Claims Examiner I" demonstrates he was nowhere close to being one of Chubb's four highest paid employees, or that he earned over $1 million per year. Therefore, Plaintiff's bald allegation that Mr. McMahon was a "covered employee" is utterly implausible, and Section 162(m) is wholly irrelevant to the evaluation of the Plan and Plaintiff's claims. However, even if Section 162(m) did somehow apply and made the bonus non-discretionary, it would still not make the bonus at issue a "wage," because it would still not be attributable to the ascertainable efforts of Mr. McMahon, as required under *Weems, Ziotas* and *Wall*. Accordingly, the First Count should be dismissed.

### C. The Requirement That An Employee Be Employed When A Bonus Is Paid Is Proper.

Even if the bonus at issue could somehow be considered "wages," Plaintiff's claim would still fail because Mr. McMahon did not qualify for the bonus under the express terms of the Plan.

The Plan requires that "Participants must be employed by an Employer as of the Award payment date or will forfeit the Award." (Plan, Section 6.) Mr. McMahon was not employed by Chubb the on March 31, 2009 payment date, and was therefore not eligible for the bonus. The Connecticut Supreme Court has been clear that "an employee's entitlement to a bonus is governed by the terms of the employer's bonus plan . . . ." *Weems*, 289 Conn. at 781, n13, quoting *Truelove v.* 95 N.Y.2d at 225. Indeed, the Connecticut Supreme Court has "concluded . .

. that our wage payment statutes expressly leave the timing of accrual to the determination of the wage agreement between the employer and employee." *Mytych v. May Dep't Stores Co.*, 260 Conn. 152, 164-65, 793 A.2d 1068 (2002).

Accordingly, courts in Connecticut and elsewhere, including the highest courts of New York and California, have upheld employers' requirements that employees be employed at the time a bonus is paid. *See, e.g., Wooters v. People's Bank*, No. CV044001723, 2007 WL 587027, *3 (Conn. Super. Feb. 7, 2007) (denying wage claim under Section 31-72 and observing that "the plaintiff needed to be an employee of the bank on December 31, 2005, when the IMIP vested, and he was not an employee of the defendant on that date."); *Ebbesmeyer v. Red Line Med. Supply, Inc.*, Docket No. CV 94-054008-S (FAC), 15 Conn. L. Rptr. 466, 1995 Conn. Super. LEXIS 3264 (Conn. Super. Nov. 20, 1995) (upholding policy of not paying commissions unless salesperson remained for 45 days after the quarter in which the sale was made); *Schachter v. Citigroup, Inc.*, 218 P.3d 262, 270 (Cal. 2009) ("Only where an employee satisfies the condition(s) precedent to receiving incentive compensation, which often includes remaining employed for a particular period of time, can that employee be said to have earned the incentive compensation . . . ."); *Truelove*, 95 N.Y.2d at 225 (2000) ("the bonus plan explicitly predicated the continuation of bonus payments upon the recipient's continued employment status. Because plaintiff resigned shortly after he received his first quarterly payment, he was not entitled to receive the remaining three payments."); *Rionda v. HSBC Bank U.S.A., N.A.*, No. 10-20654-CIV, 2010 WL 5476725, *9 (S.D.Fla. Dec. 30, 2010) (dismissing unpaid bonus claim, in part, based on fact that employer "had a written policy in place stating that an employee only could be eligible for a bonus if he was employed at the time that bonuses were awarded.").

Here, Mr. McMahon's employment terminated on February 26, 2009, and thus Plaintiff did not meet the Plan requirement that he be employed as of the date of the payment of the Award.  (Complaint, Second Count, ¶ 34.)  Because such a requirement is legitimate, and has been recognized by the courts as such, Plaintiff's unpaid wage claims fail and should be dismissed.

####        D.        Without A Statutory Violation, The Penalties Count Fails.

In the Third Count, Plaintiff seeks Civil Penalties Under Conn. Gen. Stat. § 31-69a.  That section imposes penalties on any person "who violates any provision of this chapter [558], or chapter 557 or subsection (g) of section 31-288. . . ."  The only allegation in the Complaint of any violation of a provision of Chapters 557 or 558 or Section 31-288 is Plaintiff's claim in the First Count that Chubb failed to pay him a bonus.  Because the First Count is subject to dismissal, the underlying basis for the penalty claim has been eliminated, and the Second Count should be dismissed as well.  *See, e.g., Phillips v. Patterson Ins. Co.*, 813 So.2d 1191, 1195 (La.Ct.App. 2002) (dismissing claim for bad faith penalties where "no viable underlying claim" existed due to dismissal for prescription).

####        E.        Plaintiff's Common Law Causes Of Action Are Improper.

In an attempt to avoid the clear consequences of *Weems* and *Ziotas*, Plaintiff asserts common law claims for unjust enrichment, "common law failure to pay wages," and quantum meruit.  The Commissioner is without authority to bring such claims.  Moreover, none of these theories are valid.  Nevertheless, because an adequate statutory remedy already exists, and because they are duplicative of the statutory claim asserted, the claims must be dismissed.

1.    <u>Plaintiff Lacks Authority To Assert These Common Law Claims.</u>

Section 31-72 authorizes commencement of a lawsuit by the Labor Commissioner

> "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund . . . ."

However, the General Statutes provide no authority for the Labor Commissioner to commence a lawsuit under a common law theory.  Without an express grant of authority, the Commissioner may not bring such claims.

The General Assembly created the position of Labor Commissioner by statute.  *See* Conn. Gen. Stat. § 31-1.  Therefore, "[h]is right to sue depends upon . . . statutes." *Commissioner of Labor v. C.J.M. Services, Inc.*, 73 Conn.App. 39, 48, 806 A.2d 1105 (2002), *affirmed in relevant part by* 268 Conn. 283, 842 A.2d 1124 (2004).  That is, the Commissioner has no common law authority, and may act only pursuant to a positive statutory grant of authority.  *See id.*; *Blumenthal v. Barnes*, 261 Conn. 434, 463, 804 A.2d 152 (2002) ("the office of the attorney general is a 'creature of statute' that is governed by statute and, thus, has no common law authority").  In *C.J.M. Services*, the Appellate Court examined whether the Commissioner has the authority under Section 31-72 to bring an action to recover lost wages on behalf of a subcontractor's employees.  The court examined the language of 31-72 empowering the Commissioner to take "any legal action necessary to recover . . . . unpaid wages" and concluded that this authorized the action at hand, because it sought unpaid "wages."  *See also Barnes*, 261 Conn. at 463 (finding that the Connecticut Attorney General, also a creature of statute, lacked common law authority to pursue claims against the president of an academy for self-dealing in tuition payments provided to the academy by the state).  In his each of the

common law counts, Plaintiff expressly alleges that the definition of "wages" under Section 31-71a does not apply.  (Complaint, Second Count, ¶ 36; Fourth Count, ¶ 3; Fifth Count, ¶ 9.) Therefore, Plaintiff's common law claims do not fall under the Commissioner's statutory authority to "recover… unpaid wages."  Because no other statute authorizes Plaintiff to bring these claims, Plaintiff is precluded from bringing them, and the Second, Fourth and Fifth Counts should be dismissed.

> ## 2.   An Adequate Statutory Remedy Exists And The Common Law Claims Are Duplicative.

In *Burnham v. Karl & Gelb, P.C.*, 252 Conn. 153, 157-58, 745 A .2d 178 (2000), the Supreme Court affirmed the Appellate Court's determination that a former employee could not allege a common law claim against her former employer because she had an available statutory remedy.  Indeed, courts have since clarified that, even if that statutory remedy is no longer available, the claim is still precluded.  *See Pickering v. Aspen Dental Management*, 100 Conn.App. 793, 799, 919 A.2d 520 (2007).

The General Assembly has provided a specific statutory framework for claims of unpaid wages, including statutory definitions.  As such, there exists "an adequate statutory remedy for all claims for wages in C.G.S. § 31-72 . . . ."  *Feathers v. Vivisection Investigation League, Inc.*, No. 990080107S, 2000 WL 1340365, *9 (Conn. Super. Aug. 31, 2000) (striking breach of contract claim which was based on allegation of unpaid wages).  Indeed, Plaintiff's common law theories have been rejected by several other district courts on the basis that an adequate statutory remedy exists under state wage and hour law.  *See, e.g., Garcia v. Tyson Foods, Inc.*, 766 F.Supp.2d 1167, 1188 (D.Kan. 2011) (summary judgment to employer on quantum meruit claim because adequate statutory remedy existed); *Perry v. Upper Deck Co.*, No. 05cv1329-LAB (CAB), 2007 WL 1449797, at *3 (S.D.Cal. May 11, 2007) (granting summary judgment on

unjust enrichment claim where remedies available under California Labor Code); *Bongat v. Fairview Nursing Care Center, Inc.*, 341 F.Supp.2d 181, 188–89 (E.D.N.Y. 2004) (dismissing quantum meruit and unjust enrichment claims in favor of statutory overtime-wage law claims). Therefore, the Second, Fourth and Fifth Counts should all be dismissed.

These common law causes of action should also be dismissed as duplicative of the statutory claim in the First Count.  In each of the common law counts, Plaintiff seeks "wages," which he claims are more broadly defined under common law than under Section 31-71a.  There is no authority for a broader definition of "wages" than in Section 31-71a, and indeed, the statutory definition is already quite broad.  An "examination of the plain language of [Section 31-71a] reveals that the term 'wages' has been defined broadly. . . ."  *Mytych*, 260 Conn at 159; *see also* Conn. Gen. Stat. § 31-71a(3) (broadly defining "wages" to include "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation.").  There is no reason to believe that an even broader definition of "wages" would apply under the common law.  Therefore, *Weems* and *Ziotas*, which have shaped the statutory definition of "wages," would still apply.  Once the Court dismisses the statutory claims in the First Count, the common law claims seeking wages must be also dismissed because the Court will have determined the subject bonus is not a wage.  Moreover, any claim for unpaid wages under any of Plaintiff's common law theories is duplicative of the First Count, and should be dismissed.  *See, e.g., Clougher v. Home Depot U.S.A., Inc.*, 696 F.Supp.2d 285, 295 (E.D.N.Y. 2010) (dismissing quantum meruit claims as duplicative of state statutory claim in wage and hour context).

### F.      The Quantum Meruit Claim Fails As A Matter Of Law.

To state a cause of action for quantum meruit, "[t]he pleadings must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and

representing to [it] that [it] would be compensated in the future, impliedly promised to pay [it] for the services rendered." *Burns v. Koellmer*, 11 Conn.App. 375, 383-84, 527 A.2d 1210 (1987). Absent a promise and reasonable expectation of payment, court have dismissed quantum meruit claims. For example, in *International Paper Co. v. Suwyn*, 978 F.Supp. 506 (S.D.N.Y. 1997), the employee argued that he was due a bonus under a plan that required him to be employed on the date that bonus was paid in order to receive it. The court dismissed the employee's quantum meruit claim, finding that he was on notice that continued employment was required for the bonus. *Id*. at 513-14.

Here, there is no allegation of a promise to pay Mr. McMahon a bonus under the Plan, impliedly or otherwise. The Plan was published to Mr. McMahon, so he had notice of its terms. (*See* Complaint, ¶ 5.) Therefore, Mr. McMahon knew or should have known that he was not guaranteed a bonus, and of the requirement of continued employment as a precondition to receiving a bonus. Thus, no facts have been alleged to support a claim that there was a promise to pay a bonus. Accordingly, the quantum meruit claim fails and the Fifth Count should be dismissed.

### G.   The Unjust Enrichment Claim Fails As A Matter Of Law.

"The elements of unjust enrichment are well established. Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Internal quotation marks omitted.) *Rossman v. Morasco*, 115 Conn.App. 234, 248, 974 A.2d 1 (2009). Plaintiff's unjust enrichment claim fails as a matter of law because the Complaint contains no plausible allegation that the non-payment of the bonus at issue was unjust. Rather, the non-payment was in compliance with the terms of the Plan. Moreover, the disputed bonus is derived from a formula that can include a number of factors, as described

above, that have no direct connection with Mr. McMahon's efforts or "benefits" conferred on

Chubb by Mr. McMahon.  Furthermore, Chubb retains the right under the Plan to pay Mr.

McMahon no bonus at all.  Therefore, Chubb could not have "unjustly" withheld the bonus.  Mr.

McMahon was paid his salary and is entitled to nothing more.

Plaintiff's unjust enrichment claim fails for the additional reason that restitution claims

relating to services provided to the allegedly enriched party are cognizable only under the theory

of quantum meruit.

> Both unjust enrichment and quantum meruit are doctrines allowing damages for
> restitution, that is, the restoration to a party of money, services or goods of which
> he or she was deprived that benefitted another .... Quantum meruit is usually a
> remedy based on implied contract and usually relates to the benefit of work, labor
> or services received by the party who was unjustly enriched, whereas unjust
> enrichment relates to a benefit of money or property ....

*United Coastal Industries, Inc. v. Clearheart Construction Co.*, 71 Conn.App. 506, 512-13, 802

A.2d 901 (2002).  Based on the dichotomy set forth in *Clearheart*, courts have dismissed claims

brought under the inappropriate theory.  For example, when the plaintiff in *Ranger v.*

*Gianmarco*, No. CV085004260, 2008 WL 4739531 (Conn.Super. Oct. 7, 2008), brought both

quantum meruit and unjust enrichment claims seeking restitution of monies paid, not the value of

services provided, the court found unjust enrichment to be the proper cause of action.  Here,

Plaintiff is seeking restitution for services provided to Chubb, and thus his unjust enrichment

claim fails as a matter of law and the Second Count should be dismissed.

## IV.   CONCLUSION

Based upon the foregoing, Chubb respectfully requests that the Court dismiss the

Plaintiff's Complaint in its entirety.

Respectfully submitted,


By:_____/s/_____
       James M. Sconzo
       Fed. Bar #ct04571 and
       Jonathan C. Sterling
       Fed. Bar #24576
       JORDEN BURT LLP
       175 Powder Forest Drive, Suite 301
       Simsbury, CT 06089-9658
       Telephone:    (860) 392-5000
       Facsimile:     (860) 392-5058
       E-mail:        jms@jordenusa.com
                      js@jordenusa.com

       *Attorneys for Defendant.*


## CERTIFICATE OF SERVICE

This is to certify that on this 15th day of September, 2011, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system:

    Lawrence G. Widem
    Assistant Attorney General
    Office of the Attorney General
    55 Elm Street
    P.O. Box 120
    Hartford, CT 06141-0120


               _____/s/_____
                   Jonathan C. Sterling

*240677*

18