UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
----------------------------------x
STATE OF CONNECTICUT             :
COMMISSIONER OF LABOR,           :
                                 :
          Plaintiff,             :   CASE NO. 3:11CV00997 (AWT)
                                 :
v.                               :
                                 :
CHUBB GROUP OF INSURANCE         :
COMPANIES,                       :
                                 :
          Defendant.             :
                                 :
----------------------------------x
```

## RULING ON MOTION TO REMAND

The plaintiff, State of Connecticut Commissioner of Labor (the "State"), brought this civil wage enforcement action against the defendant, Chubb Group of Insurance Companies ("Chubb") in Connecticut Superior Court.  Chubb removed the case pursuant to 28 U.S.C. § 1332, 1441 and 1446 and the State has moved to remand.  For the reasons set forth below, the motion is being denied.

## I.   BACKGROUND

Chubb is an insurance corporation chartered in Indiana with its principal place of business in New Jersey.  Chubb maintained an office in New Haven, Connecticut and employed Sean McMahon ("McMahon") of Shelton, Connecticut.  On July 20, 2010, McMahon filed a complaint with the State alleging that Chubb had failed

to pay him $37,700 in performance-based incentive wages under Chubb's Annual Incentive Compensation Plan for his work for Chubb in 2008.

The State filed its complaint, dated May 25, 2011, in Connecticut Superior Court, Judicial District of Hartford at Hartford, Connecticut.  The State alleges that Chubb violated Conn. Gen. Stat. § 31-72 by failing to pay performance-based incentive wages to McMahon, and brings additional claims for unjust enrichment, civil penalties under Conn. Gen. Stat. § 31-69a, unpaid wages, and quantum meruit based on the alleged failure to pay wages.  The State "seeks to collect double damages, i.e., $37,700 x 2 = $75,400 together with a reasonable attorney's fee, costs and interest . . . .", (Compl. (Doc. No. 1), ¶ 28), and to fine Chubb a $300 statutory civil penalty.

## II.  DISCUSSION

The State argues that this court lacks subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because there is no diversity of citizenship between the parties.  Chubb is a citizen of Connecticut.  "There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction." Moor v. Cnty. of Almaneda, 411 U.S. 693, 717 (1973).  "There is no statute which authorizes the removal of a suit between the state and citizens on the ground of citizenship,

for a state cannot, in the nature of things, be a citizen of any state." Stone v. South Carolina, 117 U.S. 430, 433 (1886).

However, in cases where the state is merely a nominal party, courts will look through the named parties and consider the citizenship of the real parties in interest.[1] See, e.g., New York v. Walsh, 256 U.S. 490, 500 (1921) ("As to what is to be deemed a suit against a state, the early suggestion that the inhibition might be confined to those in which the state was a party to the record has long since been abandoned, and it is now established that the question is to be determined not by the mere names of the titular parties but by the essential nature and

[1] Although there are few decisions outside this district containing an in-depth analysis of the "nominal party" exception to the rule that a state is not a "citizen" for diversity purposes, courts frequently hold that nominal parties do not defeat diversity jurisdiction under the "fraudulent joinder" doctrine. See, e.g., Raphael v. 18 Rest., Inc., 954 F. Supp. 549, 550 (E.D.N.Y. 1996) ("[I]f complete diversity is not present, the Court must determine whether federal jurisdiction is still proper under the principle of 'fradulent joinder', whereby parties which would otherwise defeat diversity do not, because the non-diverse parties are found to be nominal or sham parties.").

The fraudulent joinder doctrine, and courts' preference to look past the nominal or titular parties to the real parties in interest for diversity purposes, stems from 19th-century opinions in which the Supreme Court held that it would not "suffer its jurisdiction to be ousted by the mere joinder or non-joinder of formal parties," but would "rather proceed without them, and decide upon the merits of the case between the parties, who have the real interest before it, whenever it can be done without prejudice to the rights of others." Wormley v. Wormley, 21 U.S. (8 Wheat.) 421, 451 (1823). These principles remain intact. See Navarro Savs. Ass'n v. Lee, 446 U.S. 458, 460 (1980) ("'[C]itizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy."); Dep't of Fair Emp't & Hous. v. Lucent Techs., 642 F.3d 728, 737 (9th Cir. 2001) ("[T]he mere presence on the record of the state as a party plaintiff will not defeat the jurisdiction of the Federal court when it appears that the state has no real interest in the controversy.") (citing Ex parte Nebraska, 209 U.S. 436, 444 (1908)).

effect of the proceeding, as it appears from the entire record.")
(citations omitted); Ferguson v. Ross, 38 F. 161, 162-63 (2d Cir.
1889) ("Courts will look beyond and through the nominal parties
on the record to ascertain who are the real parties to the suit,
and will determine whether a state is the real party to an action
brought by or against its officer by a consideration of the
nature of the case as presented by the whole record.").

Chubb contends that here there is diversity of citizenship
because the State is not a real party in interest.  In making the
determination here as to whether the State is a real party in
interest for diversity purposes, the court finds most helpful the
leading case in this area, Connecticut v. Levi Strauss & Co., 471
F. Supp. 363 (D. Conn. 1979).  There Connecticut brought an
action in its enforcement capacity under Conn. Gen. Stat § 35-
32(a) and as parens patriae for its residents who had suffered
damages from artificially high prices and impaired competition in
the market for blue jeans.  Levi Strauss removed the case to
federal court, and Connecticut sought to remand.  Connecticut
argued that "a state cannot, in the nature of things, be a
citizen of any state," Stone, 117 U.S. at 433, and that "to the
extent that Connecticut is suing in its sovereign capacity, its
claim cannot be brought within the diversity jurisdiction of a
district court." Levi Strauss, 471 F. Supp. at 370.  In
response, Levi Strauss argued that Connecticut was suing to some

extent as parens patriae for its residents, and that their
citizenship was sufficient to satisfy the diversity requirement.

The court analyzed the four types of damages claimed to
determine the capacity in which Connecticut was bringing its
claims.  The state sought "recovery of the alleged unlawful
overcharges incurred by the citizens of Connecticut who purchased
Levi Strauss products. . . . Second, Connecticut [sought] to
collect and propose[d] to keep as state funds all provable
overcharges that cannot feasibly be returned to identifiable
purchasers.  Third, Connecticut sue[d] for $250,000 as a civil
penalty authorized by Conn. Gen. Stat. [§] 35-38.  Finally,
Connecticut [sought] an award of attorney's fees."  Id. at 370.

With respect to the first type of damages sought--recovery
of overpayments to purchasers of Levi Strauss products--the court
observed that "[i]f Connecticut were suing as Parens patriae for
the benefit of all of its citizens, its capacity would be
essentially sovereign, and it would not be a citizen for
diversity purposes.  But it has long been recognized that a state
can act as Parens patriae for a circumscribed group of its
citizens."  Id. at 370-71.  The court concluded that "[w]hen
Connecticut claims refunds to be distributed to identifiable
purchasers, the citizen status of the purchasers rather than the
sovereign status of their benefactor controls for diversity
purposes."  Id. at 371.  Therefore, the citizen status of

-5-

Connecticut residents, and not the sovereign status of the State of Connecticut, controlled for diversity purposes as to that claim.[2]

With respect to the remaining claims, the court concluded:

> However, the claim Connecticut makes for the remainder of overcharges not to be distributed to identifiable purchasers, for civil penalties, and for attorney's fees is brought in its sovereign capacity. These funds are not sought for any specific individuals or group of individuals. The funds would belong to the state. In seeking them, Connecticut cannot satisfy the citizenship requirement of diversity jurisdiction.

Id. at 372.

In Butler v. Cadbury Beverages, Inc., No. 3:97-CV-2241 (EBB), 1998 WL 422863 (D. Conn. Jul. 1, 1998), the court relied on Levi Strauss in denying a motion to remand. The plaintiff was the Commissioner of the Department of Labor of the State of Connecticut. He brought an action alleging that the defendant failed to pay a bonus to an employee under the company's incentive plan. In determining whether the diversity requirement was met, "[t]he Court [found] that the answer is provided by the scholarly analysis of then-District Judge Newman in [Levi Strauss]." Cadbury, 1998 WL 422863, at *2. The court stated that "[i]nasmuch as the State herein is seeking to recover damages for a single individual, which damages will go to that

---

[2] The claims nevertheless failed to meet the jurisdictional amount, at that time $10,000. Id. at 371.

single individual, the Court holds that the citizen status of
that individual controls for diversity purposes." Id.

In Connecticut Comm'r of Labor v. AT&T Corp., Civil No.
3:06CV01257(AWT), 2006 WL 3332982 (D. Conn. Nov. 16, 2006), the
plaintiff, the State of Connecticut Commissioner of Labor, had
filed suit in Connecticut Superior Court claiming that the
defendant, AT&T Corporation, had violated Conn. Gen. Stat. § 31-
72 and owed wages to three former employees.  AT&T removed the
case to federal court, and the State moved to remand.  The court
noted that language in the complaint "reflects in clear and
unambiguous terms that the plaintiff is seeking to collect unpaid
wages plus attorney's fees, costs and interest, and Conn. Gen.
Stat. § 31-72 makes it clear that the plaintiff shall distribute
any wages collected in this action . . . ." AT&T Corp., 2006 WL
3332982, at *2.  The court found that "the State of Connecticut
is acting as Parens patriae for a circumscribed group of its
citizens, and the citizen status of those individual citizens
rather than the sovereign status of the state, controls for
diversity purposes." Id.

In AT&T, as here, the State argued that it "is a real party
in interest by virtue of the fact that Conn. Gen. Stat. § 31-72
is a tool of public policy and the State of Connecticut has a
real interest in the enforcement of its wage and hour laws." Id.
at *3.  The court found this argument unpersuasive, concluding

-7-

that "[s]uch an argument is fundamentally at odds with the analysis in <u>Levi Strauss</u> in that it would eliminate the well-recognized distinction between the situation where the state is suing as Parens patriae for the benefit of all its citizen and that where it is acting as Parens patriae for a circumscribed group of its citizens." <u>Id.</u>

In <u>Levi Strauss</u>, "[t]o determine whether the State had an interest in controversy for purposes of diversity, Judge Newman did not look to the nature of the suit as a whole; rather, he analyzed separately each type of award sought by the State." <u>Butler</u>, 1998 WL 422863, at *2 (agreeing with the analysis set forth in <u>Levi Strauss</u>). The court concludes that the approach taken in <u>Levi Strauss</u> is the better approach, and furthermore, that <u>Levi Strauss</u> is directly on point. Here as in <u>Levi Strauss</u>, the State is suing to some extent as parens patriae for a circumscribed group of its citizens--actually one citizen--and to some extent in its sovereign status. The State's first claim is for statutory nonpayment of earned performance-based incentive wages under Conn. Gen. Stat. § 31-72. The statute provides that "[w]hen any employer fails to pay an employee wages . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, . . . ." Conn. Gen. Stat. § 31-72. Although the statute provides that "[t]he Labor

-8-

Commissioner may collect the full amount of any such unpaid wages," it also provides that "[t]he commissioner shall distribute any wages, . . . to the appropriate person."  Id.  By its own terms, the statute aims to recover damages for individuals deprived of their rightful wages, not to provide any benefit to the State.  Thus, this claim and the claims for unjust enrichment, unpaid wages and quantum meruit, are brought as parens patriae for McMahon.

The State's third claim is for $300 in civil penalties pursuant to Conn. Gen. Stat. § 31-69a.  The statute provides that employers who violate Section 31-72 and other state labor rules "shall be liable to the Labor Department for a civil penalty of three hundred dollars for each violation . . . . The Attorney General, upon complaint of the Labor Commissioner, shall institute a civil action to recover [such] penalties . . . . Any amount recovered shall be deposited in the General Fund and credit to a separate nonlapsing appropriation to the Labor Department, . . . ."  Conn. Gen. Stat. § 31-69a.  Thus, this claim is brought by the State in its sovereign status.

As in Levi Strauss, with respect to the first claim here, the citizen status of McMahon, rather than the sovereign status of his benefactor, controls for diversity purposes.  This is so notwithstanding the fact that the State is also bringing a claim in its sovereign status.

-9-

The State argues that the "one key fact that distinguishes this case from AT&T" is that "the State has assessed and seeks to collect a civil penalty under Conn. Gen. Stat. § 31-69a.  If successful, the civil penalty will be paid to the State and held by the State for its own uses."  (Mem. Supp. Mot. to Remand to State Ct. (Doc. No. 13) ("Pl.'s Br.") 3). The amount of the fine is $300.  That distinction between the instant case and AT&T is immaterial to the court's analysis here.  It is Levi Strauss that is directly on point.  There, the court concluded on the basis of one of the claims Connecticut was making that the citizen status of the purchasers controlled for diversity purposes, notwithstanding the fact that Connecticut was also bringing a claim for a $250,000 civil penalty.

The State argues that it is the real party in interest here with respect to all of the claims because it is pursuing its "quasi-sovereign" interest, which it states is an argument that is not addressed in Levi Strauss.  It relies on Connecticut v. Moody's Corp., Civil No. 3:10cv546(JBA), 2011 WL 63905 (D. Conn. Jan. 5, 2011).  In addition, the State emphasizes that nonpayment of earned wages is a felony and contends that "[t]he State's pursuit of a company that has committed a felony under Connecticut law is a matter that belongs in State Court."  (Id. at 5).

However, the holding and analysis in Moody's do not conflict

with <u>Levi Strauss</u>, as is evident from the following language in <u>Moody's</u>:

> It is noteworthy that the cases Defendants rely on, <u>Caldwell</u>, <u>Comcast</u>, and <u>Levi Strauss</u>, all involve state actions to secure damages or restitution explicitly on behalf of specific individuals, insurance policy holders, cable subscribers, and blue jeans purchasers respectively.  Here, although the State alleges harm to individual citizens, its prayer for relief seeks only "[a]n order pursuant to Conn. Gen. Stat. § 42-110, directing [Defendants] to pay restitution," without specifying beneficiaries of that restitution, which the State argues may be ordered paid to the Connecticut Department of Consumer Protection's Consumer Protection Enforcement Account "to fund positions and other related expenses for the enforcement of Department of Consumer Protection licensing and registration laws," Conn. Gen. Stat. § 21a-8a(a).

<u>Moody's Corp.</u>, 2011 WL 63905, at *3.

As to the point that the State's pursuit of a company that has committed a felony under Connecticut law is a matter that belongs in state court, the court simply notes that had state prosecutors chosen to pursue a criminal prosecution of Chubb, the matter would not have been removable to federal court.

The State also argues that Chubb has not shown that there is a reasonable probability that the money damages awarded will exceed the $75,000 statutory threshold.  The State has demanded in the Complaint $75,400 plus reasonable attorney's fee, interest and costs, and the $300 statutory civil penalty.  The $75,400

demand represents the amount of the claimed unpaid wages, i.e., $37,370, with double damages pursuant to Conn. Gen. Stat. § 31-72.

The amount in controversy is determined on the basis of the plaintiff's complaint at the time the petition for removal was filed.  See Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994).  The Second Circuit recognizes "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999).  An action may not be remanded unless it is apparent to a legal certainty that the plaintiff's claim cannot meet the amount in controversy requirement.  See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

"[I]f punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied."  A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991).  Although a heightened level of judicial scrutiny is imposed in cases where punitive damages are utilized to satisfy the amount-in-controversy requirement, see Zahn v. Int'l Paper Co., 469 F.2d

1033, 1034 n. 1 (2d Cir. 1972), that scrutiny is not applicable here because the damages in question are expressly permitted by the statute and are tied to the amount of the claimed actual damages. See Miller v. Eur. Am. Bank, 921 F. Supp. 1162, 1167 (S.D.N.Y. 1996) ("The courts' heightened scrutiny includes determining whether, given the facts alleged, damages are recoverable under state law. If the applicable law would not entitle the plaintiff to the sums claimed as punitive damages, such sums should be excluded in assessing the amount in controversy.").[3]

Therefore, the court concludes that there is a reasonable probability that the money damages awarded will exceed the $75,000 statutory threshold.

The State argues that the court should abstain under Louisiana Power & Light v. City of Thibodaux, 360 U.S. 25 (1959), which permits abstention "in diversity cases because of unclear state law." Bethpage Lutheran Serv., Inc. v. Weicker, 965 F.2d 1239, 1242 n. 2 (2d Cir. 1992) (citing Thibodaux, 360 U.S. 25). "Under the Thibodaux abstention doctrine, a district court may

---

[3] In addition, "the attorney's fees [the State] seeks are an element of damages to be included in satisfying the jurisdictional amount, since they are authorized by statute as recoverable" in this action. Connecticut v. Levi Strauss & Co., 471 F. Supp. 363, 371-72 (D. Conn. 1979); see Conn. Gen. Stat. § 31-72 ("[T]he Labor Commissioner may bring any legal action . . . and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court."). The amount of those fees could easily match the difference between the $37,700 unpaid wage claim and the $75,000 jurisdictional amount.

abstain from exercising diversity jurisdiction to avoid deciding an unclear and important issue of state law bearing upon sovereign prerogative." <u>Aurelius Capital Master, Inc. v. MBIA Ins. Corp.</u>, 695 F. Supp. 2d 68, 73 (S.D.N.Y. 2010).

However, there are three recent decisions by the Connecticut Supreme Court relating to the question of whether an incentive bonus is a wage under Conn. Gen. Stat. § 31-73a(3) and the most recent decision, <u>Ass'n Res., Inc. v. Wall</u>, 298 Conn. 145 (2010), is one where the Connecticut Supreme Court "harmonized its most recent decisions." (Pl.'s Br. at 12). Therefore, the State has not shown that there is unclear state law.

## III. CONCLUSION

For the reasons set forth above, the plaintiff's Motion to Remand to State Court (Doc. No. 12) is hereby DENIED.

It is so ordered.

Signed this 31st day of March, 2012 at Hartford, Connecticut.

_____/s/_____

Alvin W. Thompson<br>
United States District Judge

-14-